All right, and each side has 15 minutes and I know I was advised by the courtroom clerk that the Rob Bonta has ceded five minutes to the Humane Society in this matter for the 15 minutes and so on the appellee side you have 15 minutes total so there's no rebuttal time and obviously the IPPA you have rebuttal time but that being said what I will tell you is if the court has additional questions I'm assuming Krista Liska is that would that be you okay you're going first right okay so if we have additional questions and it goes up at the podium and pull her off that she's using your time I'll give you five minutes okay as far as that goes we may not have additional questions that take you beyond but so count on making yours ten minutes all right good morning good morning thank your honor and may it please the court Michael Raupp on behalf of the appellate I'll attempt to reserve three minutes for rebuttal the government commerce clause exists to prevent states from enacting discriminatory regulations ensuring that states do not use access to their economic markets in an attempt to dictate policy nationwide thereby preventing trade wars among the states in National Pork Producers versus Ross the Supreme Court confirmed that the type of claim asserted by IPPA in this case one alleging discrimination stands at the cornerstone of the courts Commerce Clause jurisprudence and although the courts opinion and Ross fractured in some respects the court was crystal clear unanimously the discriminatory laws fail under the dormant Commerce Clause so I think there are three grounds on which it's discriminatory the first is that it imposes requirements nationwide that the California had previously imposed just on its own in-state farmers correct conditions for basically maintaining livestock that's correct it prohibits the sales in the state of California the breeding sows are not housed in a manner consistent with that the entirety of your brief seems to treat prop 2 as a phase 1 and prop 12 that is phase 2 if prop 2 had never happened would you still view prop 12 as discriminatory so I yes but I think I think the argument would be slightly different right because right that's correct yes we're saying we send prop 2 as opposed to enacting significant here now I think if you look at it let's just say we were starting part watch as you said we were in a situation where you're just enacting prop 12 standalone by itself I still do think arguments under Pike Pike versus Bruce Church and I also think you would have to look at the discriminatory impact if there was one given the relative size of the markets so with I guess there's a lot of arguments I'm sure there's people in California there are farmers in California that don't like that this this law that because it it's it's difficult for them so when I look at the discriminatory nature of it they're making people in California do what they're telling everyone else to do that's where I have difficulty seeing let's say let's say prop 12 said in its preamble or something like that California has decided for the whole world how animals should be treated and we don't care if it costs you more money we don't care about that we think that everyone needs to treat pigs in a certain way and they have to have turnarounds they have to have all of this and we're going to impose it on the entire world well the last case said they can go extraterritorial so why is this more burdensome on what I'm having a hard time finding it being discriminatory on its face so I first let me just push back a little bit on the nomenclature on its face I mean I think I think you're right that it textually it has the same requirement for in-state as out-of-state but I don't know that they can do the extraterritorial we accept you accept that at this point well that it's not per se unconstitutional if they go extraterritorial it's still relevant to the analysis that it's extraterritorial but I there's not a prohibition that's what was argued in Ross and we don't it doesn't automatically violate the Dormant Commerce Clause per se yes that's correct I agree I agree with that no we're not we're not resisting we're not resisting that it's feels unconstitutional in its application and I think that goes to my response to Judge Cunningham's question which is that the context here does matter because when Prop 2 is enacted and you have all of the folders in California that did go through that process and did make the changes and then it's being imposed on extraterritorially on folders outside of the state as well correct and so so it's it's it's both one the time differential and that's a significant component of it but secondly it's the leveling effect that's created and that's what Judge Christian was how one houses keeps livestock within the state of California now we're talking about 12 and that was that was enacted at the same time a much more rapidly but well setting aside that the regulations took years to write but setting that aside for the moment that was that was enacted across the board in the same way it didn't dissipate producers well it does though because the state farmers are already compliant so an out-of-state farmer well I mean I suppose that's true that all of the in-state California farmers that there was certainly more evidence to that effect in the record and which which again let me back up and get one one clarifying point on this that goes to our point that this is you know this is on the pleading stage right and we've planned the discrimination sufficiently in the complaint and so if there's questions about the level of discrimination that it actually existed in the marketplace that should come out at the district court through discovery there's an investigation process technical question that follows up on one question that judge Kristen asked in your view is there any part of judge Akuta's opinion that is not binding on us so the I don't think so no I think it would be binding although the claims that were there was not a discrimination issue that I understand that you've different but yes you you can see that given the affirmance everything in that opinion to the extent it's relevant and there's an argument about that is binding and it's by us as a through judge panel that's correct the only reason I'm hedging it all is because to the extent there was something in judge Akuta's opinion that could be read to be inconsistent with any of the holdings that were in the Supreme Court's opinion I suppose there could be an argument that I don't think there's anything material to our position today that distinction to draw with judge Akuta's opinion with the Supreme Court's opinion is that the claims are different we're not making and it's sort of an express per se unconstitutionality argument it's a discrimination argument so I think it's it's prep to it's the prep to and the leveling effect so I think there's two aspects of property first it's the leveling aspect that it imposes so it took an advantageous market position that out-of-state farmers had and and made that less advantageous by imposing regulations that condition access to California's market on compliance with these regulations and so if you look at cases from the Supreme Court such as versus Washington State Apple advertising and Russell and Creamery versus Healy the Supreme Court talks about this leveling effect and how it doesn't necessarily need to be detrimental impose affirmative you know or impose obligations outside of the state that leveling effect accords affords a discrimination argument so so the second the second would be the time the time differential right the lead time differential that they had to come into compliance with these and I think that's especially critical here correct yes correct but all but the again the the time differential is in yes the distinction between the yes between prop 2 and prop 12 yes that's correct and I think that's especially significant here when you look at the size differential of the markets in state and out-of-state so is it possible that the district court did not abuse its discretion in denying the preliminary injunction but did abuse its but but did abuse well I guess it's a matter of law that you're you chose not to amend the complaint you said that it it looks like there was a cost of compliance issue on prop 12 that was made before that didn't seem to go anywhere yes you're not so you're not making that argument so let me let me clarify just if I can make one comment on the on the first point that you made with respect to the procedural posture here we believe that the court abused its discretion and denying the preliminary injunction here and we think that should be reversed because we do have at least a fair chance of prevailing on these discrimination arguments especially now that the Supreme Court has decided Ross so I think there's a point to be made on Exxon that I think also applies to the elevator of the foie gras case out of the Ninth Circuit in both of those circumstances there were no in-state competitors so you don't have the protectionism discrimination aspect to it right so it's it's fundamentally apples and oranges it's a different it's a different circumstance here where you do have in-state providers in this in this circumstance but you know as we've put out you know have it have an advantage and fairly so as compared to out-of-state you're talking about the Maryland case you're saying there were no in-state producers correct as opposed to purveyors yes that's correct I have to be your argument that's right that's right and it's fundamentally I mean whether you know and again we have to remember that this statute is passed based on a subjective moral sense right and that's what the state is justifying this as the second one being well if the if the first and the first yeah yes understood understood so a couple of points on that I do think that the brief engages with that because so let me let me talk about the second for just a moment well and I think the state and I believe that the state's brief essentially says we we don't need to rely on that second that there was a there was a purpose that's stated in the statute sure but if you look at it and I the point that we did engage in the brief on on this point was that in California's own economic assessment it admits that there's no scientific evidence whatsoever on the food safety point and so and there was none presented in the record whatsoever so it's not just what the state says it's had to establish it now that we're at the preliminary injunction phase and they failed to do so and so we're left with and I believe that the state's brief admits or comes close to admitting that they're relying just on the animal welfare component of this and I do think that's significant when we come back to this this this point right because if we're going to allow statutes to be passed extraterritorially based on that subjective sense that it's products produced based on minimum wage or immigration status or access to health or whatever the hot-button social issue is for the day all of a sudden becomes the basis for economic protectionist and type statutes but the local benefits the local benefits here as I understand it is citizens of California saying we don't want to eat pork that was raised in a just like it would be we don't want to buy products that are made with labor that wasn't paid at a level that we find acceptable hypothetical that one I took issue with because I couldn't imagine frankly a local benefit to California imposing such a statute you know hypothetical one that said we're not going to import anything if the minimum wage paid in state rates wasn't $20 or something what would be the local benefit to California the local benefit hypothetical for me for that reason and this one although you're describing it as value-laden maybe I do think there were two different purposes that were described but it's still under pike or still gonna have to do that balancing three members of the court so yeah if I may answer this question and that loops back to judge Callahan's point that she made with respect to judge Akuta's opinion when we're talking about the different the different interests that are there are the different burdens that are at issue here judge Akuta characterized them and in RAS as compliance costs that were asserted here but there was far more asserted in this complaint in excuse me in the preliminary injunction record including negative health consequences for the pigs and the sows themselves worker safety risks the risk of having to call the breeding herds to make sufficient space the disruption of the nationwide pork market which was not an issue there either so far beyond in our complaint far beyond just a compliance cost with the statute so those are the interests that are weighed here in our complaint also that that you against the state that says that it was discriminatory Tori can you tell me what language there was in the complaint about that that you're let me see if I can I don't know if there's something specific you're talking you're speaking of in the complaint where we allege the discrimination is that the question so paragraph 213 there's some regulatory text that says this proposal does not directly impact human health and welfare of California residents worker safety or the state's environment perhaps that's what the quarter is referring to and that's one instance where we did use language from the state I just want to ask what your read is on the correct rule we should be applying in interpreting the Supreme Court's decision so I think that your honor is correct as you previously articulated that there is no longer an express per se unconstitutionality argument with respect to extraterritorial jurisdiction I don't think this case presents that question so I don't think there's really much to do on that point with respect to the direct discrimination claim or that the effects discrimination claim I think this court is riding on new cloth at that point because I don't think that that argument and in fact that argument wasn't raised just court justice Gorsuch says no fewer than five times in his majority opinion that that argument was not made was not there so as to the discrimination point I think you're riding on new territory there with respect to the pipe claim I think that goes back to my last answer that I do think the court has to take into consideration what the Supreme in part concurrence in part descent so I mean I think it gets difficult to decide what to do with because then you don't have a majority opinion on heights yeah I mean we may be wrong but we said as recently as 2022 in the Ballinger case citing marks dissenting opinions cannot be considered when determining the holding of a fractured Supreme Court decision only the opinions of those who concurred in the judgments can be considered and none of the neither the or any of the justices who joined his descent concurred in the judgment correct I would have to go back and look at that I'm not I'm not sure I don't I don't know because there were several of the opinions that were listed as both concurrences and right that's right and so if we're if we're in that posture let's just posit that that's and again I'll double-check that I'm sure you're not first correct on on who ultimately joined in the judgment then I think we are back to an affirmance of what judge Akuta did on Pike and what judge Akuta did on Pike is characterize all of these costs as compliance costs and held that all the costs that were asserted there as compliance costs and held that those were not sufficient to create a judge Akuta's opinion saying at the very end under our precedent unless a state law facially discriminates against out-of-state activities directly directly regulates transactions that are conducted entirely out-of-state substantially impedes the flow of interstate commerce or interferes with a national regime a plaintiff's complaint is unlikely to survive a motion to dismiss and I think we get to the point where it's the substantial disruption of the interstate market I mean I think that's what this case turns on not not that prop 12 is outside the heartland that the argument advanced in that's that's my point is that what was outside the heartland was the claim that was asserted there not the not the the law but but it has to be understood in the context of what the market looked like and so and again pretend they're totally disassociated but that is just something that had happened in the past that's what already set the market what the market looked like what the what firms from the state and out of the state had to comply with so you know whether it's quote-unquote phase one or phase two whether you look at it that way or you just look at the market as it existed was initiated you still have that discriminatory impact there I understand that I think it was difficult because of the number of ways in which that that opinion split so I hope I answered it's been this question I think that it turns on that substantial disruption to the market point and I think those are the allegations that were that were lacking and were asked they were certainly not Dr. Panzer's declaration that's included in the excerpts of record that goes in great detail about the interconnectedness of the supply chains of the international pork market and how this lab disrupts that on a national scale okay I'll give you some time for rebuttal but I need to see what we get the issues framed and may it please the court I think one case I do want to start real briefly is plaintiffs talk a lot both in their briefing and here about the preliminary declarations I want to just sort of affirm that the question that we really think is the starting place and ending point is the propriety of the grant of dismissal on the motion to dismiss correct but I think plaintiffs have the opportunity to amend and have they felt like bringing in the thing said in those declarations into a complaint would have suffice to get past the motion dismiss hurdle they had that opportunity in front of them and they elected not to be elected to appeal on what they have in front of the court your view is they had the choice the district court gave them the choice they turned down the choice and so they have no equitable argument that we should look past the complaint that they chose correct your honor that the question we have the authority to say that we do we have the authority to say we think it could be amended are you saying that they've taken that away from us I'm not sure as a legal matter I think as an equitable matter the fact that plaintiffs had the opportunity to take a second bite at the apple and chose to appeal including you know they very well could have this case will stay during the pendency of the national court decision and plaintiffs then could very well have come in after a national court ruled and requested to you know dismiss the appeal perhaps seek to file leave to file an amended complaint in light of national pork I think we might have been amenable to those discussions but they chose to continue forward with this appeal even after having denied the right to leave to amend and having denied desire to sort of recalibrate any sort of strategies in light of national pork so I think at this point equitably speaking plaintiffs have decided they want to play you know with the cards that they've been dealt on their discriminatory statute look like on its face I mean there's on the face and then there's in effect right correct so what would it what would one look like on its face give me a hypothetical statute that how California what could California do that would be discriminatory on its face I think a classic example are some of the cases discussed in national pork like Baldwin where you have price fixing statute so a statute that said that no pork producer may sell to a distributor who sells in California for less than what a California pork producer sells would be an example the milk cases would be an example I think you could make a good argument that there'd be a discriminatory situation if you have statute that said something like no one may sell pork in California unless that pork was fed by feed that came from a California farm that would look like a discriminatory statute as well in that we've specified only California feed can be used for pigs to be sold in California regarding property that features very prominently in his brief and he says that was the market in California it was reality so two parts response there I think we do agree with your honor that that is kind of an obvious or discomparison but I think it's helpful to take a step back and look at what really we're talking about when we look at discrimination for purposes of the Dormant Commerce Clause it's not simply that there is some sort of disparate impact existing or a difference in how burdens allocated between out-of-state versus in-state producers I think excellent is quite clear that even if the entirety of the burden falls on out-of-state commerce or out-of-state producers that's not sufficient for discrimination and what national porks majority emphasizes is the heartland of Pike in the heartland of the Dormant Commerce Clause is not so much discrimination as it is economic protectionism the question is is there discrimination going on that is about economic protectionism in terms of different firms are going to be winners or losers from what we're interested in is protecting the market all right and I think that that's exactly that the Exxon winners and losers different firms shifting between different producers is what Proposition 12 is doing and it's worth noting that plaintiffs to state in their complaint the small number of producers I want to say about 4% already met the rules for Proposition 12 putting aside whether you're right that it's apples versus oranges let's assume we had a hypothetical where Prop 2 was apples and Prop 12 was apples let's say they were both apples and Prop 2 made California residents growers raisers of the livestock absolutely comply and then had nothing to do with support that was sourced outside the state and then you have Prop 12 which is exactly identical to Prop 2 and we have a situation where the out-of-state producers have materially less time than the in-state ones who are in existence would you agree that that would be a problem do you just so I'm clear you yes so so the hypothetical Proposition 12 was a restriction on the conduct of raising pigs I'm not a sales restriction it was exactly that we have we have Prop 2 is exactly the same as Prop 12 that was later passed my hypothetical Prop 2 well I think that this points to an issue in the way the plaintiffs are looking at that there may be I don't want to concede anything but likely would be some extraterritoriality problem if California said to Iowa pork producers if you don't confine your pigs with 24 square feet we're gonna come and find you for that conduct alone because we can't you know this this ports existing case so so what we have is they are materially identical as to what pork products can be sold in in the state so I apologize I think that that would make for a closer question I think that if you have a sales restriction on California producers only and then a sales restriction on out-of-state sell line in this case it'd be more like sellers that that would create a closer question because in that case you would have a better argument that the state gave more time to an industry and was trying to level the playing field I because the restrictions that have been imposed on California are are greater because there's both the direct conduct regulation on how kids are raised and a sales restriction so it's can California dictate what the rest of the world has to do and is that what California is doing here California concerning California thinks it's its own nation let's let's let's put it that way California can go to impose its values on is this is value statute or what is it and so let me I'll start first with that secondary question and turn to the proposition identifies two main purposes which is partly the ethical concerns I think there's a large part of it the California voters finding certain ways of raising animals to be cruel and homemade inhumane and wanting to read inhumane products from their market part of it is the public health and safety concerns and we definitely have not disclaimed or disavowed those as a benefit of this statute but I think that California has the right to determine what products are sold within its marketplaces within the borders of its states and that that may have a large or small impact on the rest of the country or on how other businesses choose to do business is the practical reality of living in you know a country with 50 states the states get to decide what they want sold they can decide we don't want products we view as inhumane they can say we don't want products we have concerns about health risks from and that is completely cognizant with the dormant commerce clause and to the concern that this is disrupting things too much this is problematic Congress has a power under the affirmative commerce clause it can go in and it can set standards for the nation it can preempt and displace California's laws if it deems it truly necessary to have a uniform market on this I mean I think that the important thing is that the plurality decision by Gorsuch and this court's prior case law starts with the burden and if plaintiffs cannot establish or allegations to show a substantial burden under interstate commerce we don't even get to the benefits the second part is that the question is whether or not the burden is clearly excessive compared to the local benefits and I think you know particularly given the concerns about how do you measure dollars versus morality that's that's a high standard is be clearly excessive and plaintiffs have not carried that weight here even if we get through the substantial burden which for reasons raised by this court under the national court decisions both the plurality and this course decision plaintiffs have not sufficiently alleged what what would give me an example of what would allege that you know the exam there are the cases involving instrumentalities of interstate commerce situations that involve you know that I think there's the mudflaps and the links of trains a what is looks to be like a smokescreen for economic protectionism would be a situation where you have that I see that I'm out of time you know I'm hesitant to say sort of what the extremes might be you can imagine a hypothetical where the argument is that the burdens impose on interstate commerce itself so not necessarily just on certain producers would be eradicating market for a anywhere in this country ever again maybe then but we're clearly far from that sort of hypothetical situation here so the six weeks and the six years how would you recommend we deal with that so I think that that again goes back to the question of is this really just a slightly it's the first I think we agree with just percent but this is a applesauce comparison because we're regulation of conduct versus a sales restriction so it's not really applicable to view them that way and it is worth noting there are California businesses that don't raise pigs but do sell pork that face the same timelines of compliance that both Iowa out-of-state businesses do in the interstate businesses do Albertsons for instance does not raise pork but does certainly sell it so we don't think the comparison is opposite and then the second point is is that to the extent that there might be some difference maybe out-of-state market was not as well positioned to respond the question is discrimination for purposes of economic protectionism and there's nothing here that it all indicates proposition 12th point was to protect in-state pork producers at the expense of out-of-state businesses because he looking at if you look to the national pork discussion of cases like Baldwin Brown and Healy they're really talking about situations where you're disrupting a natural competitive advantage that exists in disenabling a business's ability to set their own prices or to engage in what benefits and that's really just not what is going on here this law is not about protecting California's pork industry it's about eliminating cruelty and humane products it's about public health and safety the voters district court relied on elevators and Exxon and what they're saying is in elevators and Exxon there was no comparable in-state competitor that was being advantaged by the state law here there is so I guess here competing California farmers are provided a head start that Iowa farmers are not so if it isn't that circumstance categorically different than what's in elevators and Exxon I may be simply different as a factual matter but I don't know that the facts matter is a legal matter because I think that again the salience is really are we trying to allocate burdens in a way that's designed to protect our in-state market and proposition 12 which to be clear further imposes even more restrictions on the conduct of in-state pig farmers since the 24 square foot requirement was not included in proposition 2 is that it would be sort of anomalous to impose further restrictions on your local industry in an attempt to protect it from competition from outside so we would request the court affirm unless you have any further questions thank you thank you thank you all right we'll hear from the Humane Society at five minutes thank your honor may it please the court Ralph Henry on behalf of the intervener defendants and proponents of this measure with much more time here today and as counsel for proponents I would like to address the purposes of the measure but before I go there because the crux of this case is about discrimination I'd like to address the lead time argument the leveling effects argument that was just made and this issue of effects first I'll start with the the leveling effect like this mistake of burden for a benefit associated with proposition to proposition to burdened in-state producers then proposition 12 comes along and it acts a separate sales ban that applies on its face equally to in-state and out-of-state entities to the extent this gave any advantage to out-of-state producers prior to enactment of proposition 12 that was an unearned advantage so the citation to the hunt apples case which is about an earned advantage that industry had by virtue of having higher quality apples which was negated by the regulatory provision enacted in North Carolina is not on point in fact this courts Rocky Mountain fuel standards case sites to hunt and explains the difference between earned and under and advantages and under advantages are not those the removal of constitutes discrimination I would also like to help the hypothetical excuse me that the judge attempted I'm going to get there and I'm not going to concede that what I'm about to say would be a discriminatory law however this is not the case where California came along and gave subsidies to in-state producers to change their production practices and then didn't offer those subsidies to accessing the California market by supplying pork if that were the case and then there were a sales ban layered on top of it again I do not concede that it would be unconstitutional that it would be discriminatory but it would at least be much more logical than the plaintiffs discrimination argument here as to lead time where they try to convert obligation into opportunity and burden into benefit I'd also like to make two other points with regard to the state's burden argument the lead time argument the first is that as judge Christian mentioned it is a discriminatory effects argument there's no credible allegation that there's a discriminatory purpose here in our view as we briefed it and as a discriminatory effects claim they're permitted to and they don't and the point that I want to make is that for all the talk in the complaint in the which I would summarize as we plaintiffs members out-of-state producers were not given as much time to be prepared for the initial implementation of Proposition 12 as in-state producers had by virtue of the obligations of Proposition 2 they never once in the complaint actually allege an actual protectionist shift in market share to in-state goods and that is required to make out a discriminatory effects claim we're instructed as much no I don't think so your honor well not just because they did not event because they're outside of the complaints I mean if we're gonna go there what's good for the goose is good for the gander I mean we submitted a declaration and by a noted University of Texas economist and studies its industry dr. Debra McKeesler and it's cited it's in our brief and it's at district or docket 25-10 and so if the court was to go outside the complaint in looking for instance at the substantial burden argument you know it would have to note that there are reasons to question the accuracy and speculative nature of the plaintiffs claims indeed the industry's gonna robberies well I certainly don't I mean my top line point here is here is no it's very peculiar that the plaintiffs argued this case the vast majority of their opening brief is tucked into an argument about the denial the preliminary injunction which we don't get to if this course affirms dismissal and I think the result of it is that it afforded the place the opportunity to talk a lot about this extra complaint evidence and as a substantial and as discriminatory effects this courting tax on which has been mentioned for lots of other purposes specifically indicated that the hallmark of discriminatory effects is a shift causing local goods constitute a larger share of the market then then out-of-state goods and they theoretically could have alleged that if it had been true but they haven't they could have but they didn't and the last thing I'll say about the discriminatory effects argument is this one is not fully fleshed out in the briefing and that is that this discriminatory effects arguments based on the time is associated with one aspect of the law a temporally related one what about the times preparedness of in-state versus out-of-state entities for implementation of proposition 12 and when federal courts remedy constitutional violations of something by state laws federal courts do not throw the baby out with the bathwater every time there's a constitutional violation which again we don't concede there is you don't throw out the entirety of the statute you don't enjoy the entirety of statute indefinitely and so the type of court order that would be that would address plaintiffs concerns here would be one that delays implementation of this law for a period of time that would allow plaintiffs members to come into compliance at which point whatever disparity they imagine between in-state now state producers to get ready for this law will have disappeared that would satisfy the constitutional concern and what do we know it's 2024 this law was enacted in 2018 it's been five and a half years and the law has not been enforced against anybody my clients call me all the time they say when is California going to be selling a cruel and unsafe pork we now have five and a half years so it turns out that plaintiffs lead time discrimination claim which is the underpinning of their dormant commerce clause discrimination claim their preemption claim their privileges immunity claim they all depend on it has already been redressed there's nothing for the courts to do if the court were to remand this the remedy would be to give them the time that they've already had time has passed past plaintiffs claims by I see him out of time so I thank you all right just three quick points that I want to make the state argues that states get to decide what they want to sell in their states and unfortunately it's just not quite that simple because we have it seems that the as a salesman that's sufficient to get around constitutional scrutiny but we know that that's not true because if you look at even the even the pricing the milk pricing cases but certainly hunt versus Washington apple growers in those cases those were enacted as salesman's right if you said you can't sell it in this state unless it is labeled in a certain manner right that's a salesman within the state yet it fails under the dormant commerce clause and we know this has to be true that a salesman can't insulate it from constitutional protection I mean take the hypothetical where the state of California said we're not going to allow sales in our state of any products manufactured in Texas right we have no problem concluding that that's discriminatory under the Commerce Clause yet it's placed as a salesman so it can't simply be that we say it's a constitutional muster we have to look further into what the realities and the effects are of what happens with the specific statute that's enacted the second point the state talks about protectionism and about how it is actions are valid unless there's a protectionist intent and I would I would draw the point's attention to paragraph 210 in the complaint where we quote specifically from some of the regulatory text implementing proposition 12 that indicates that out-of-state farms are going to find it more costly to compete with an out-of-state farms unless we have this salesman in place so again if down the road in discovery we want to get into how protectionist it was and what the actual effects of this were, fine, but certainly for purposes of the 12b6 point we stated a claim here and the court should at least remand on that point. What about the six years since it's been five and a half? Well, let's just say that's where I am and that's what I think that's what the issue was. Sounds kind of futile now. Well, but let's remember what's happened over the course of that five and a half years. For all of that time, or for a large portion of that time, an either by judicial order or by agreement of the state of California while we were disentangling the Ross litigation, right? And so now we're back here drawing on a clean slate. And you're saying you didn't do anything because you didn't have to and now if you have to, then you want six years. Well, at least to litigate the issue of what's the appropriate remedy in that circumstance. And remember, too, that the self-rule provision that both parties talked about, how they could self-work in the interim period, or at least any state providers could, which is a component of the discrimination as well, that just expired eight days ago, right? So it's still timely. Do you have questions? So wrap it up in a minute, okay? Okay. All right. The last point is Judge Callahan, yes, about the ability to amend how all this procedure works out with respect to the procedural posture here. We certainly believe that the right remedy here is a finding that there was an abuse of discretion on the injunction that should be enjoined now. If the court disagrees with that, at the very least under Ross and its precedents, we've stated a claim based on this complaint alone for all of the reasons that we've discussed here. Even if the court disagreed with that, I still believe you're right, Your Honor, that this court would have the ability to say, especially in light of the changed circumstances with Ross and the changed circumstances of the law, that plaintiffs should be entitled to leave to amend if they so choose. I don't think the court needs to get to any of that because I certainly think on this complaint's text alone, it warrants reversal both as to the preliminary injunction and to the text of the complaint. All right. This matter will stand submitted. I want to thank all of you for an excellent argument in this case. It's a difficult case, and we always appreciate when the attorneys are that well-prepared and versatile on their arguments. And we enjoy argument when you can answer our hypotheticals, whether they're good or they're not. So thank you very much. And you all did an excellent job. I speak for myself, but I think probably my colleague would agree. Absolutely. All right. Thank you. Thank you. This court is in recess until tomorrow at 9 a.m.
judges: CALLAHAN, CHRISTEN, BENNETT